UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN J. O'BRIEN, ET AL. | No. 12-CR-40026-WGY |

**WILLIAM BURKE'S**
**RENEWED MOTION FOR ACQUITAL**
**PURSUANT TO FED. R. CRIM P. RULE 29(c)**

The defendant, William Burke III respectfully asks this Court to enter a judgment of

acquittal on count one, racketeering conspiracy.  The defendant renews all arguments made in

the Motion to Dismiss and the original Rule 29 Motion, joins in the applicable arguments of the

codefendants, and states that the evidence introduced at trial, in the light most favorable to the

government,  is insufficient to support the verdict rendered on July 24, 2014.  The evidence

shows only the following:

1. William Burke was a Deputy Commissioner from western Massachusetts during the

   period in the alleged conspiracy from 2000-2009.  As such, he had a supervisory role

   over all of the probation officers in Hampden, Hampshire, Berkshire, and Franklin

   counties.

2. His offices were in Springfield and Northampton, Massachusetts.

3. In testimony at the trial, he was mentioned only in relation to four hiring decisions

   alleged as predicate mail fraud acts in the racketeering indictment, in which he was not

charged; the hiring of Chris Hoffman as a probation officer in Hampshire Superior Court in January, 2006; the promotion of Frank Glenowicz to assistant chief probation officer in Franklin County Superior Court in February, 2006; the promotion of Amy Parente to assistant chief probation officer in Milford District Court in March, 2005;  and the promotion of Bernard Dow to assistant chief probation officer in Worcester District Court in February, 2005.

4.  The government withdrew the claim of mail fraud relating to Chris Hoffman after jeopardy attached and before deliberations, conceding to the insufficiency of the evidence on that predicate act.  The jury found that the mail fraud allegation relating to Amy Parente was not proven.  This left only the Glenowicz and Dow promotions as predicate acts where William Burke was alleged to have played any role whatsoever.

5.  Neither of these two hires occurred within the applicable statute of limitations for racketeering conspiracy.

6.  Frank Glenowicz was a very qualified applicant with nine years' experience as a juvenile court probation officer and four years as a social worker.  Burke was on the judge's round panel with Judge Bertha Josephson and chief probation officer Frank Sianno.  Six applicants, including Glenowicz, were forwarded to the Commissioner.  The government attempted to establish that Sheila Dintamen was the most qualified candidate.  However, Sianno favored Michael Gralinski.  In the final round interview, Dintamen ranked fourth and Gralinski was sixth.  Wall testified that he did not lower candidate rankings.  Before the final round, Burke said to Wall, words to the effect of, I like Glenowicz, and Wall replied I have that.  There is no evidence that any panel member in the judge's round was provided any information about him in advance, or that any scoring was other than

legitimate.  There is no evidence that he was sponsored by a politician.  The evidence that Glenowicz thanked Thomas Petrolati at some unspecified time after he was promoted in a chance encounter at Joe's Café does not support the proposition that his hiring was fraudulent.

7.   Bernard Dow was a very qualified applicant.  He had worked as a probation officer in Worcester District Court for 29 years before his promotion.  He had master's degree from Worcester State College.  Although letters to the judge's round panel members allow an inference that Burke was on the panel, both chief probation officer Mattei and Judge LoConto said they had no memory of Burke participating and Mattei testified that he thought the commissioner's designee was Diane Fasano.  There is no evidence that any panel member in the judge's round, including Burke, was provided any information about any candidate in advance of the interview, or that any scoring was other than legitimate.  There is no evidence that Burke communicated any preference to the other panel members.  There is no evidence that Burke communicated with anyone on the final round panel.  Although the government argued that the judge's round scoring was inconsistent with the interview notes, this ignores the overwhelming evidence at the trial that the panel members used a variety of extraneous factors in the judge's round scoring including personal knowledge of the candidates and observations of job performance.  In the Dow promotion, both Mattei and LoConto had worked with Dow for years in Worcester District Court and were intimately familiar with him.  Mattei conceded that Dow was the best candidate, and LoConto did not contradict the assertion. Although Dow was recommended by then Speaker Sal Dimasi, no evidence was introduced that anyone at the judge's round was communicated that fact, or new anything about the reference.

There was no basis to find that any scoring sheet was altered or changed, and no basis to allow any inference from any handwriting comparisons since original documents were not introduced by the government.

8. Edward Driscoll testified that he was appointed a regional administrator in western Massachusetts in 2008.  He gave general testimony about hiring which included being given names of the Commissioner's choice in advance of judge's round interviews.  He did not testify that Burke provided names.   He testified that Burke, as the western Massachusetts Deputy Commissioner, controlled hiring in that region.  Given that Burke was the Deputy Commissioner for the region, this does not support a finding that he was a conspirator.   He provided no time frame on his testimony.  He agreed that when he himself was promoted in 2008, the only specific hiring decision that he testified about, that Burke favored a rival applicant and that he was promoted nonetheless.  He testified that Burke made a statement to him that he wrote the book on probation hiring without any reference as to when or where.   He gave no testimony about any specific hire other than his own promotion and gave no evidence about Glenowicz, Dow, or any charged hire.

9. Nick Deangelis testified that he was a regional administrator in western Massachusetts. He gave general testimony about hiring which included being given names of the Commissioner's choice in advance of judge's round interviews.  He testified that Burke provided him with a list of names on one occasion, without specifying when, where or whether it had any impact on any hiring decisions.  He gave no testimony about any specific hire and gave no evidence about Glenowicz, Dow, or any charged hire.

10. Evidence that information from the Commissioner was conveyed to his designee on the judge's round hiring panel is completely lawful and proper and is not evidence of criminal conduct.

11. The evidence demonstrated that the trial court manual or hiring standards are vague and give no guidance, criteria or definition of "most qualified."

12. The evidence demonstrated that the trial court manual or hiring standards are vague, do not require scoring or ranking candidates in the judge's round interviews, and do not prohibit consideration of extraneous factors like personal knowledge of the candidates and job performance.  In fact, the evidence was overwhelming that extraneous factors and prior knowledge of the candidates were routinely considered by all of the judge's round panel members.

13. The evidence demonstrated that the so called final round interview was not required by the trial court manual or hiring procedures.

14.  The evidence demonstrated that the trial court manual or hiring standards are vague and give no guidance or criteria concerning when or to whom references or recommendations can or may be made and whether and to what extent they can or may be factored in to the ranking and hiring decisions.

15. The evidence demonstrated that the trial court manual or hiring standards are a patchwork of current and outdated written and oral criteria, applied in a haphazard and inconsistent manner, effected and effectively amended by ad hoc decision making, custom, and practice, and cannot be a basis for imposition of criminal liability where clear and unambiguous notice of what constitutes a criminal violation is required.

ARGUMENT

I.      THE GOVERNMENT FAILED TO PROVE THAT THE DEFENDANT
        KNOWINGLY JOINED A MAIL FRAUD CONSPIRACY OR THAT HE
        ENGAGED IN A PATTERN OF RACKETEERING ACTIVITY BY AGREEING
        TO COMMITT OR COMMITTING TWO PREDICATE MAIL FRAUD
        OFFENSES

"For a defendant to be found guilty of racketeering conspiracy,  the government must prove '(1) the existence of an enterprise affecting interstate commerce, (2) that the defendant knowingly joined the conspiracy to participate in the conduct of the affairs of the enterprise, (3) that the defendant participated in the conduct of the affairs of the enterprise, and (4) that the defendant did so through a pattern of racketeering activity by agreeing to commit, or in fact committing, two or more predicate offenses.'" *United States v. Shifman*, 124 F.3d 31, 35 (1st Cir. 1997) (quoting *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1561 (1st Cir. 1994)). To establish such a pattern, the government must prove 'at least two acts of racketeering activity' over a period of ten years." *United States v. Brandao*, 539 F.3d 44, 54 (2008) (quoting 18 U.S.C. § 1961(5)).

There was no evidence that Burke engaged in a pattern of fraudulently influencing hiring, directly or indirectly changed scores, or engaged in any other activity that would support his conviction for racketeering conspiracy.  His role in acting as the commissioner's designee in the Glenowicz and Dow hires is insufficient as a matter of law to prove that he participated or conspired to participate in any acts of mail fraud.  Since the evidence is insufficient that Burke

conspired to commit mail fraud in either of these hiring decisions, the evidence is insufficient as a matter of law.

Although Edward Driscoll at one point made the vague statement that Burke wrote the book on probation hiring and controlled hiring in Western Massachusetts, he could provide no evidence in regard to a specific hire, gave no specific time frame, and provided no testimony that Burke received or provided names ahead of the interviews. Similarly, regional administrator Nicholas DeAngelis, while stating that on one occasion Burke gave him a list of names, had no memory of when, where or whether it effected any hiring decision, and provided no evidence of any specific hire or any charged hire involving Burke.

Viewing this evidence in the light most favorable to the government, a reasonable jury, properly charged could not find that the defendant was a racketeering conspirator. There is no direct evidence of a conspiracy and the circumstantial evidence is insufficient as a matter of law. Therefore, the court must enter a judgment of acquittal as to William Burke on count 1 of the indictment.

## II.    THE PINKERTON CHARGE

The Court, over the defendant's objection, submitted eight substantive mail fraud counts to the jury under the so called *Pinkerton* doctrine. *Pinkerton v. United States*, 328 U.S. 640 (1946). There was no evidence that Burke was engaged in a conspiracy at the time of these acts, and no evidence that he participated in any way. The jury rejected all eight counts as to Burke and found him not guilty. However, the wrongful submission of these counts for which the defendant had no role, predictably caused an erroneous inclusion of the defendant in the conspiracy. "The *Pinkerton* charge is not appropriate in marginal cases because of the danger that the jury will find the defendant vicariously liable for a conspiracy only because the

prosecution has shown that others have committed numerous substantive offenses. *United States v. Sanchez,* 917 F.2d 607, 612, n.4 (1st Cir. 1990) (*citing United States v. Sterling*, 506 F.2d 1323, 1341-42 (2nd Cir. 1974) (Friendly, J.). It was, therefore inappropriate, as in the present case, where the jury was bring asked ". . . to infer, on the basis of a series of disparate criminal acts, that a conspiracy existed." *Sanchez*, at 612, n.4. As described above, Burke's involvement in any conspiracy was not proven and the submission of the Pinkerton theory resulted in a wrongful vicarious finding against him.

III.     THE GOVERNMENT FAILED TO PROVE THAT THE DEFENDANT WAS
         ENGAGED IN A RACKETEERING CONSPIRACY WITHIN THE
         APPLICABLE STATUTE OF LIMITATIONS

The defendant was indicted in April, 2012. The statute of limitations for racketeering conspiracy is five years under 18USC 3282. The government acknowledged that under any theory, he could not be charged with racketeering since his last alleged illegal hiring involvement occurred in February of 2006. They proceeded on the so called *Pinkerton* theory and charged him with ten substantive mail fraud counts (counts 3-12) within the statute of limitations. *Pinkerton v. United States*, 328 U.S. 640 (1946). The theory was that in 2007 and 2008 Burke was involved in a conspiracy and could reasonably foresee the commission of the mail fraud alleged in the ten counts. Two of those counts were dropped for lack of proof after jeopardy attached. The remaining eight counts were submitted to the jury over the defendant's objection and all resulted in verdicts of not guilty as to him.

There is no evidence that Burke was involved in any conspiracy within the five year limitations period. See *US v. Stewart*, 744 F.3d 17 (1st Cir. 2014). There is not a shred of evidence that he played any role in any hiring decision in 2007-2008. Further, the jury rejected

any claim that he could foresee the activity of the co-defendants in 2007 and 2008, negating the government's attempt to circumvent the statute of limitations on the racketeering conspiracy through this fictional artifice of reasonable foreseeability.  Finally, the testimony regarding the promotion of Edward Driscoll in 2008, where the candidate favored by the defendant was rejected, demonstrates his lack of influence and non-involvement in any conspiracy during the limitation period.

## IV.    THE RULE OF LENITY REQUIRES A JUDGEMENT OF ACQUITAL

The rule of lenity provides that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."   *See Skilling v. United States*, 130 S.Ct. 2896, 2927 (2010).   "This interpretive guide is particularly appropriate" in construing fraud statutes because "mail and wire fraud are predicate offenses under the Racketeer Influenced and Corrupt Organizations Act." *Id.* (internal brackets and quotation marks omitted). *Skilling v. United States*, 130 S.Ct. 2896, 2932 (2010).   "The "void for vagueness" doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  This doctrine "addresses concerns about (1) fair notice and (2) arbitrary and discriminatory prosecutions." *Skilling*, 130 S. Ct. at, 2933 (2010).  The First Circuit has warned of the potential vagueness problems inherent in the mail fraud statute, in particular, "The broad language of the mail and wire fraud statutes are both their blessing and their curse.  They can address new forms of serious crime that fail to fall within more specific legislation.  On the other hand, they might be used to prosecute kinds of behavior that, albeit offensive to the morals or aesthetics of federal prosecutors, cannot reasonably be expected by the instigators to form the basis of a federal

felony.  *United States v. Czubinski*, 106 F.3d 1069, 1079 (1st Cir. 1997).  Given the vague,

ambiguous patchwork of the Trial Court Manual, upon which the alleged false certifications

were based, the criminal offenses alleged lacked sufficient definiteness that allow ordinary

people can understand what conduct is prohibited,  in a manner that does not encourage arbitrary

and discriminatory enforcement.

## Conclusion

For the foregoing reasons, the defendant, William Burke III respectfully asks this Court

to enter a judgment of acquittal on count one of the indictment.

Respectfully submitted,

WILLIAM H. BURKE
 by his attorneys

 /s/ John Amabile
 John Amabile, Esq.
 James C. Bradbury, Esq.

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non-registered participants on September 2,
2014.

/s/ John Amabile